**Alex ALEX, et al., Plaintiffs,**

v.

**JASPER WYMAN & SON and C & D Corporation, Defendants.**

**Civ. No. 85–0196–B.**

United States District Court, D. Maine.

March 18, 1988.

---

Frederick B. Stocking, Pine Tree Legal Assistance, Inc., Bangor, Me., for plaintiffs.

James G. Goggin, Charles L. Cragin, Verrill & Dana, Portland, Me., for defendants.

## ORDER ACCEPTING MAGISTRATE'S RECOMMENDED DECISION

CYR, Chief Judge.

The court undertakes *de novo* review of the United States Magistrate's recommended denial of the cross motions for partial summary judgment on the plaintiffs' claim that defendants failed to disclose wage rates to plaintiffs at the time of plaintiffs' recruitment as blueberry harvesters, as required under the Migrant and Seasonal Agricultural Worker Protection Act [AWPA], 29 U.S.C. § 1821(a)(2).[1]

■ Plaintiffs object to the Magistrate's conclusion that the time within which the defendants were required to make written disclosure of the wage rate had expired by the time the plaintiffs reached defendants' workplace. *See* Recommended Disposition, at 14–15. Plaintiffs contend that the term "recruitment," as employed in the AWPA, covers a time period extending up to the point of actual hiring, which did not occur until after the plaintiffs arrived at the workplace.

The term "recruitment" is to be given its plain meaning, and the legislative history of the AWPA, as recounted in the Recom-

---

1. Title 29, United States Code, section 1821(a)(2), states:

    Each farm labor contractor, agricultural employer, and agricultural association which recruits any migrant agricultural worker shall ascertain and disclose in writing to each such worker who is recruited for employment the following information at the time of the worker's recruitment:

    . . . .

    (2) the wage rates to be paid. . . .

mended Disposition, makes clear that Congress intended the recruitment phase to end with the worker's departure from his permanent place of residence for a distant work site. *See* Recommended Disposition, at 12–13 (citing H.R.Rep. 97–885). The Magistrate's conclusion gives the term "recruitment" its plain and intended meaning.

■ The defendants object to the Magistrate's determination that there is a disputed issue of fact as to whether the estimated wage rates disclosed by defendants in the Wyman Employee Handbook were the most precise wage rates defendants were able to ascertain during the recruitment period.[2] The court agrees with the Magistrate that there is a genuine issue of material fact as concerns this matter.

Neither party challenges the Magistrate's conclusion that a precise wage rate need not be disclosed if it is not ascertainable within the recruitment period. *See* Recommended Disposition, at 9–11. But the defendants argue that it is the *plaintiffs'* burden to show that the defendants were able to determine the wage rate at the beginning of the recruitment process, and not, as the Magistrate concluded, that it was the *defendants'* burden to show that they were *unable* to determine a precise wage rate despite their good-faith efforts to do so.

■ The court agrees with the Magistrate that the defendants must establish a good-faith effort to ascertain a wage rate during recruitment. But the court defers

placement of the burden of production and persuasion as to whether any information acquired through any good-faith efforts by defendants would have enabled timely disclosure of a wage rate. *See* 29 C.F.R. section 500.75(b) (establishing both a good faith duty to ascertain wage rates and a duty to timely disclose them).

Regardless of the placement of the burden of proof, defendants are incorrect in asserting that there is no record evidence to indicate that the condition of the blueberry crop, or other factors relevant to a wage rate determination, could have been determined until immediately before the harvest. Plaintiffs have cited to statements in the record that at least some factors relevant to a wage determination, such as the application of herbicide and pollination, were ascertainable during the recruitment phase. *See* Plaintiffs' Statement of Material Facts, at ¶ 3. A determination as to the significance of these and possibly other factors in enabling the ascertainment of a wage rate, as well as when those factors became known, is reserved for the trier of fact.

Since the cross motions for summary judgment must be denied in any event, the court need not consider the defendants' contention that the Magistrate incorrectly struck portions of the Cragin and Willey affidavits in arriving at his recommended conclusions of law. *See* Recommended Disposition, at 2–5.

---

**2.** The relevant sections of the Wyman Employee Handbook state:

MINIMUM WORK EFFORT

Because of federal and state laws, every raker is expected to rake in such a manner that they earn more than Three Dollars and Thirty-five Cents ($3.35) per hour—the minimum wage. Our Box Rate is established on a basis so that an average worker will earn more than the minumum (sic) hourly wage. For example, if you are paid One Dollar and Seventy-five Cents ($1.75) per box and you work for six (6) hours, you must rake at least twelve (12) boxes in order to meet the Minimum Work Effort.

If you are unable to meet this minimum, you will not be permitted to continue to work as a raker and will not be permitted in the fields. Most rakers do not have a problem

raking this number of boxes in six (6) hours. This will be especially true in 1984 because of much better weed control practices.

\* \* \* \* \* \*

WAGE RATES TO BE PAID

You will be paid solely on the amount of blueberries that you harvest. You will be paid a specified amount (i.e., Box Rate) for every box raked, well winnowed, and filled with blueberries to the top of the box at the time of the fill....

The Box Rate will be established by the Field Supervisor based on the condition of the crop at the time of harvesting at a given field. The Box Rate may be changed by the Field Supervisor and the Director of Operations with the approval of the President. If the Box Rate is changed, the Crewleader will be informed of such changes.

The Magistrate's Recommended Disposition is *ACCEPTED* and both motions for partial summary judgment are *DENIED*. The scheduling of further pretrial proceedings is hereby referred to the U.S. Magistrate.

SO ORDERED.